UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARA JOAN CLARK,<br><br>                    Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:16-cv-05274-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 16, 2012, plaintiff filed an application for disability insurance benefits, and on July 24, 2012, she filed another one for SSI benefits, alleging in both applications that she became disabled beginning October 6, 2011. Dkt. 9, Administrative Record (AR), 12. Both applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ), plaintiff, represented by counsel, appeared and testified, as did a vocational expert. AR 30-68.

ORDER - 1

In a written decision, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled. AR 12-23. The Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, which plaintiff then appealed to this Court. AR 1; Dkt. 3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the opinion evidence from John Haroian, Ph.D., Jennifer Irwin, M.D., Richard Borton, Ph.D., Thomas Clifford, Ph.D., and Erin Brower, LMHC;

(2) in rejecting the lay witness evidence in the record;

(3) in assessing plaintiff's residual functional capacity (RFC); and

(4) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinions of Drs. Haroian and Irwin and in rejecting the lay witness evidence, and thus in assessing plaintiff's RFC and in finding she could perform other jobs. Remand for further administrative proceedings, therefore, is warranted.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing

ORDER - 2

the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.   The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

ORDER - 3

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

ORDER - 4

physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

   A.   Dr. Haroian

With respect to the opinion evidence from Dr. Haroian, the ALJ found:

> In June 2012, Dr. John Haroian opined that the claimant could perform simple, repetitive tasks in a low stress environment with limited social contact. Dr. Haroian opined the claimant had moderate to marked/severe limitations in cognitive and social functioning. Dr. Haroian also gave the claimant a [global assessment of functioning (GAF)] score of 45[1] (6F). I give some weight to Dr. Haroian's opinion but I find that Dr. Harioan's assessment does not supported [sic] marked limitations in social functioning. For instance, the claimant scored 30 out of 30 on the mental status examination, which suggests no cognitive impairment. On the Trail Making Test A, her performance was in the normal range and on the Trail Making Test B, she performed in the moderately impaired range. The claimant had no difficulty following the conversation. While I found that the claimant has marked limitation in social functioning, the evidence would not support a severe limitation in dealing with public contact. The claimant is able to go to a grocery store and she indicated she was able to meet some neighbors. I also do not find that the claimant would have marked/severe symptoms. As described above, the claimant's stressors are primarily situational. Although the phrase "low stress environment" is vague and does not actually describe the claimant's functional abilities, I have limited her to having no more than simple work-related decisions and few workplace changes, which would accommodate the claimant's adaptive limitations. Finally, the GAF score of 45 is inconsistent with the claimant's report of activities to Dr. Haroian, which include feeding and walking her dogs, cleaning her house, meeting the neighbors, and doing her own grocery shopping.

AR 20. Plaintiff argues the ALJ's reasons for rejecting Dr. Haroian's opinions were not valid.

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV-TR) at 32). It is "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Pisciotta*, 500 F.3d at 1076 n.1 (quoting DSM-IV-TR at 34); *see also Cox v. Astrue*, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

ORDER - 5

The Court agrees.

As plaintiff points out, the psychological testing results the ALJ relied on to reject the marked limitations in social functioning, do not actually address social functioning but rather her cognitive abilities. AR 527. Indeed, the ALJ himself pointed this out, noting it suggested plaintiff had no cognitive impairment. AR 20. Similarly, the fact that plaintiff had no difficulty following the conversation, bears more on her cognitive capabilities than on her ability to function socially. The ALJ also noted plaintiff could go to the grocery store and meet some neighbors as evidence of no severe limitation in social functioning. But the mere ability to go to a store and meet some neighbors does not itself constitute such evidence, and the evidence in the record overall shows rather significant difficulties in social functioning. AR 255, 269-72, 283, 286-87, 289-90, 297-300, 311, 314-17, 327, 331, 333-34, 343, 346-49, 365.

The ALJ also erred in discounting the marked/severe limitation in completing a normal workday on the basis that plaintiff's stressors were primarily situational. Specifically, the record overall does not necessarily show this to be the case, but rather indicates plaintiff's mental health issues are more permanent and/or long-standing in nature. AR 364, 488-89, 544, 546-49, 608-11, 617, 620-21, 627-630, 632-33, 635. In addition, as plaintiff also points out, the ALJ did not address Dr. Haroian's further opinion that she was "likely to need repeated instruction and regular and consistent supervision – in completing simple tasks." AR 526. Lastly, the Court agrees with plaintiff that the evidence in the record concerning her daily activities, which appear to be fairly limited, is not necessarily inconsistent with a low GAF score such as that Dr. Haroian assigned. AR 52, 56-60, 266-73, 283-90, 294-301, 311-18.

B.    Dr. Irwin

Plaintiff also challenges the ALJ's findings concerning Dr. Irwin's opinions:

ORDER - 6

> In November 2012, Dr. Jennifer Irwin, a consultative examiner opined that the claimant had the ability to perform simple and repetitive tasks and some detailed and complex tasks. Dr. Irwin opined the claimant had moderate limitation in some areas of social and cognitive functioning but marked limitation in the areas of her ability to complete the normal workday and work week without interruption from a psychiatric condition, and that her ability to deal with the usual stress encountered in the workplace is markedly impaired. Dr. Irwin also gave the claimant a GAF score of 50 (9F). I give some weight to the opinion of Dr. Irwin has [sic] it is generally consistent with her examination findings, but I give little weight to her opinion regarding the claimant's marked limitations. As detailed above, the claimant's primary stressors are situational and thus her ability to maintain a normal workweek would only be limited by temporary factors. Also, in July 2013, the claimant stated she spends as much time away from home as possible so as to not get involved in family drama, which suggests that she could function better outside of her stressful situations (17F10). The claimant has also been engaged in [Division of Vocational Rehabilitation (DVR)] services and had a job interview, which indicates that the claimant's symptoms are stable enough for her to pursue gainful employment. Finally, the claimant's decision to remove herself from her home demonstrates that she is able to recognize stressful situations and act appropriately [sic] take steps to alleviate such stresses.

AR 20-21. Here too the Court agrees with plaintiff that the ALJ's reasons for declining to adopt all of Dr. Irwin's opinions were not valid.

First, as discussed above, the evidence in the record overall does not support the ALJ's statement that plaintiff's mental health issues are primarily based on situational stressors. As such, this does not form a proper basis for determining the marked limitations Dr. Irwin assessed would only be limited by temporary factors. Second, as plaintiff points out, rather than showing she is able to recognize stressful situations and act appropriately to take steps to alleviate such stress, removing herself from her home may instead merely indicate an inability to deal with stressful situations in general, including stressful work situations. Lastly, the ability to engage in DVR services and attend a job interview, does not alone evince an ability to obtain or maintain gainful employment.

ORDER - 7

II.     The ALJ's Rejection of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

In regard to the lay witness evidence in the record, the ALJ found:

> I give some weight to the lay witness statements from Cheryl Clark, the mother of the claimant, but only to the extent they are consistent with the overall evidence (6E; 11E; 18E). Ms. Clark described some activities that would suggest greater functioning than alleged by the claimant. For example, Ms. Clark stated that the claimant would spend all day, every day, doing housework/yard work, such as gardening. Ms. Clark reported the claimant could use public transportation and go out alone. She said the claimant has social activities once or twice a week. Ms. Clark stated the claimant engages in knitting. She also noted that the claimant does not prepare her own meals whereas the claimant's own function report indicated that she did prepare some of her own meals.
>
> In September 2013, Jenna Dalesky, a vocational rehabilitation counselor, identified a number of functional limitations for the claimant but there is no indication as to how these functional limitations were formulated (15E). As such, it is given little weight.

AR 19.

As to the limitations Ms. Dalesky identified, the record contains documentation from her indicating she may have relied on a number of factors, such as plaintiff's mental health diagnoses and symptoms, past work history, and functional limitations. AR 331-34, 337-38. The failure of the ALJ to specifically consider this evidence was error. With respect to the statements plaintiff's

ORDER - 8

mother made, they indicate greater limitations in terms of social and other daily activities than the ALJ's findings reflect. AR 283-90, 311-18, 343-50. Defendant argues that when an ALJ gives valid reasons for rejecting a claimant's testimony, and those reasons are equally relevant to similar lay witness testimony, any error in failing to give reasons for discounting that testimony is harmless. Here, though, the ALJ did give reasons for rejecting the lay witness statements, but those reasons as explained above were simply not valid. As such, the Court finds the ALJ erred in rejecting those statements.

III.     The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ assessed the following RFC:

ORDER - 9

**The claimant is limited to tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes. She is limited to occasional and superficial interaction with the public and with coworkers. The claimant would not perform well as a member of a highly interactive or interdependent work group.**

AR 16-17 (emphasis in the original). But because as discussed above the ALJ erred in failing to properly evaluate the medical opinion evidence from Dr. Haroian and Dr. Irwin and in rejecting the lay witness evidence in the record, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

IV.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response

ORDER - 10

to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 22-23. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – also cannot be said to be supported by substantial evidence or free of error.

V.  Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the medical opinion and lay witness evidence in the record, as well as plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

ORDER - 11

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 28th day of November, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 12